UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA

  Plaintiff,

 v.

CHRISTOPHER KYLE MIDDLETON,

  Defendant.

Case No. 24-cr-40036-JPG

## MEMORANDUM AND ORDER

  This matter comes before the Court on defendant Christopher Kyle Middleton's motion to revoke (Doc. 37) Magistrate Judge Reona J. Daly's August 23, 2024, order (Doc. 34) detaining him pending the trial of his criminal case. The Government responded to the motion (Doc. 43), and Middleton replied to that response (Doc. 45). Because the reply brief raised a new argument, the Court allowed the Government to file a sur-reply brief (Doc. 48). The Court held a hearing on the matter on December 12, 2024, which consisted only of argument; no new evidence was offered or taken. The Court announced from the bench that it denied the motion to revoke Magistrate Judge Daly's August 23, 2024, detention order and indicated this written order would follow.

**I. Background**

  The Government filed a criminal Complaint against Middleton in June 2024 alleging that he had committed the offense of Interstate Communication of a Threat to Injure in violation of 18 U.S.C. § 875(c) (Doc. 1). *United States v. Middleton*, 24-mj-4054-RJD. The Complaint detailed Middleton's electronic communications to representatives of the Illinois State Police, the Illinois Attorney General's Office, the Johnson County State's Attorney's Office, and the Williamson County State's Attorney's Office. Those communications contained language threatening to ambush and kill them and their families. The statutory sentencing range for such a crime is no more than 5 years. 18 U.S.C. § 875(c).

A. <u>Original Motion for Detention</u>

The Government moved to detain Middleton before trial on the grounds that he was a danger to the community and that there was a serious risk he would try to obstruct justice or threaten a witness (Doc. 6). *See* 18 U.S.C. § 3142(f)(2)(B). At Magistrate Judge Daly's June 18, 2024, hearing on the motion, Middleton waived his right to a detention hearing (Docs. 15 & 17). Magistrate Judge Daly accepted the waiver and remanded Middleton to the custody of the United States Marshals Service ("USMS") pending trial (Doc. 18).

In July 2024, the grand jury indicted Middleton on two counts of Interstate Communication of a Threat to Injure in violation of 18 U.S.C. § 875(c) (Doc. 20).

B. <u>Motion for Release</u>

Middleton then moved for pretrial release arguing that he had overcome the rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3) (Doc. 28). He pointed to evidence of his strong ties to Southern Illinois (he was born here, had lived locally for the past 15 years, was close to his mother, had a supportive sister); his minimal criminal history (no felonies, one misdemeanor for disorderly conduct, no history of drug/alcohol abuse); his health (high blood pressure requiring medication); and his history of attending all court proceedings in his misdemeanor case.

He argued that the Government had not shown by clear and convincing evidence that there were no conditions or combination of conditions that would reasonably assure his appearance in court and the safety of the community as required by 18 U.S.C. § 3142(e)(1). Specifically, he argued the Government had not presented evidence that Middleton planned to make good on his threats. He also noted he cooperated with two searches of his home which revealed no guns. He proposed that electronic/GPS monitoring, psychological treatment, monitoring internet usage, and an order of no-contact with victims and witnesses would satisfy 18 U.S.C. § 3142(e)(1).

    C.    <u>Ruling on the Motion for Release</u>

On August 15, 2024, Magistrate Judge Daly held a hearing on the motion for release at which she received proffers of evidence through counsel, heard testimony from Probation Officer Schuyler Stephens, and reviewed the pretrial services report (which found that there were no sufficient conditions or combination of conditions for release).

In an August 23, 2024, written order (Doc. 34), Magistrate Judge Daly reopened the detention matter based on the unanticipated circumstance that the jail mismanaged Middleton's medication. Magistrate Judge Daly then weighed the factors in 18 U.S.C. § 3142(g), but she did not change her ultimate conclusion that Middleton should be detained pending trial. This is the order Middleton now asks the Court to revoke.

**II.    Motion to Revoke Magistrate Judge Daly's Denial of Motion for Release (Doc. 37)**

    A.    <u>Review Standard</u>

Middleton brings this motion pursuant to 18 U.S.C. § 3145(b). Under that authority, the Court must conduct an "independent review" of the matter (in essence, a *de novo* review of the weighing of the relevant factors), although it may give deference to Magistrate Judge Daly's findings of historical fact. *United States v. Wilks*, 15 F.4th 842, 847 (7th Cir. 2021). The Court is free to take new evidence, although none was offered or accepted in this case. 18 U.S.C. § 3142(f).

    B.    <u>Analysis</u>

In his motion to revoke Magistrate Judge Daly's order denying him release, Middleton argues that detention is not authorized by law. He also reiterates his arguments that the Government has not carried its burden by clear and convincing evidence.

        1.    <u>Statutory Authority for Detention</u>

The Bail Reform Act of 1984 ("BRA"), 18 U.S.C. §§ 3141-56, provides the statutory authority for pretrial detention. It authorized pretrial detention "if the Government demonstrates by

3

clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure . . . the safety of any other person and the community.'" *United States v. Salerno*, 481 U.S. 739, 741 (1987) (quoting 18 U.S.C. § 3142(e)(1)). As a threshold matter, pretrial detention is available *only* where the crime involves any of the circumstances listed in 18 U.S.C. § 3142(f)(1) or (2). *Salerno*, 481 U.S. at 747-48; *see Faheem-El v. Klincar*, 841 F.2d 712, 720-21 (7th Cir. 1988). Thus, a defendant who is a danger to the community but whose case does not involve circumstances listed in 18 U.S.C. § 3142(f) cannot be detained.

> For the purposes of this case, the relevant subsections of the BRA state:
>
> **(f) Detention hearing.**—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—
>> **(1)** upon motion of the attorney for the Government, in a case that involves—
>>> **(A)** *a crime of violence*, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>>> * * *
>>
>> or
>>
>> **(2)** upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves—
>>> * * *
>>>
>>> **(B)** *a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.*

18 U.S.C. § 3142(f) (emphasis added). The Court examines each potential statutory basis for pretrial detention in turn.

      a.      <u>18 U.S.C. § 3142(f)(1)(A):  Crime of Violence</u>

Again, 18 U.S.C. § 3142(f)(1)(A) refers to: "a *crime of violence*, a violation of section 1591 [certain sex trafficking], or an offense listed in section 2332b(g)(5)(B) [international terrorism] for which a maximum term of imprisonment of 10 years or more is prescribed."

The offense of Interstate Transmission of a Threat to Injure is a crime of violence. The

4

BRA defines "crime of violence" to include: "an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another. . . ." 18 U.S.C. § 3156(a)(4)(A) (the "elements" clause).

The crime with which Middleton is charged qualifies. Interstate Communication of a Threat to Injure in violation of 18 U.S.C. § 875(c) has as its elements: "(1) the knowing transmission in interstate commerce of a communication; (2) the communication contained a threat [to injure]; and (3) the communication was transmitted for the purpose of issuing a threat, or with knowledge that the communication would be viewed as a threat." *United States v. Capriotti*, No. 21 CR 16, 2021 WL 229660, at *3 (N.D. Ill. Jan. 22, 2021) (citing *United States v. Khan,* 937 F.3d 1042, 1051 (7th Cir. 2019)). The Court does not see how the communication of a threat to injure a person cannot, as a matter of course, be a "threatened use of physical force against the person . . . of another." Middleton's charged offense fits squarely within the elements clause of the BRA's definition of a "crime of violence." *Capriotti*, 2021 WL 229660 at *3 (collecting cases). This is true regardless of whether Middleton actually took any violent step toward completing the threatened injuries.

Furthermore, the crimes of violence referred to by 18 U.S.C. § 3142(f)(1)(A) are not limited to crimes for which the maximum term of imprisonment is 10 years or more. Under the traditional statutory interpretive "rule of the last antecedent," a modifying phrase that follows a list applies only to the last item in the list unless there is reason to find otherwise. *Lockhart v. United States*, 577 U.S. 347, 351 (2016). Thus, under this rule, the phrase "for which a maximum term of imprisonment of 10 years or more is prescribed" applies only to "an offense listed in section 2332b(g)(5)(B)"—international terrorism—but not to "a crime of violence." *United States v. Dai*, 99 F.4th 136, 139 (2nd Cir. 2024) (defendant eligible for detention if charged with "(1) a crime of violence, (2) a violation of § 1591 (sex trafficking of children or by force, fraud, or coercion), or (3) an offense listed in § 2332b(g)(5)(B) (federal crimes of terrorism) for which a maximum term of

5

imprisonment of 10 years or more is prescribed" (footnote omitted).  If the traditional rule applies, the fact that the statutory maximum sentence of imprisonment for Middleton's charged crime is 5 years does not prevent it from falling within 18 U.S.C. § 3142(f)(1)(A).

There is no good reason to depart from the "rule of the last antecedent" when interpreting 18 U.S.C. § 3142(f)(1)(A).  It is a traditional rule Congress likely understood to apply when it modified the statute in it in 2004 to include crimes of international terrorism with sentence maximums of 10 years or more.  *See* Pretrial Detention of Terrorists Act of 2004 ("PDTA"), Pub. L. No, 108-458, Title VI, § 6952(2), 118 Stat. 3775 (2004).

The history, words, and punctuation of 18 U.S.C. § 3142(f)(1)(A) do not suggest Congress intended any other interpretation.  Previous versions of the statute have always made "crimes of violence" eligible for detention, and the PDTA simply added the *third category with the 10-year modifier* in one fell swoop.  There is no suggestion that in 2004 Congress intended to reduce the breadth of the violent crimes eligible for detention.

Additionally, no comma separates the 10-year modifier phrase from the third category (international terrorism).  This leads to the inference that the third category and the 10-year modifier are directly connected.  Thus, the phrase "for which a maximum term of imprisonment of 10 years or more is prescribed" qualifies *only* the final item in the list, "an offense listed in section 2332b(g)(5)(B) [international terrorism]," which is not charged in this case.

Any other conclusion would be absurd.  For example, all crimes in the second category—18 U.S.C. § 1591 [certain sex trafficking]—have a statutory maximum of over 10 years, so modifying that phrase by the 10-year requirement would be meaningless.

Middleton's 5-year statutory maximum will not prevent his pretrial detention because the 10-year requirement does not apply to "a crime of violence."  Detention of Middleton is authorized under 18 U.S.C. § 3142(f)(1)(A) because he is charged with a crime of violence.

        b.        18 U.S.C. § 3142(f)(2)(B): Serious Risk of Obstructing Justice

Middleton's detention is also authorized by 18 U.S.C. § 3142(f)(2)(B). In the Court's judgment, he poses a "*serious risk*," as opposed to an ordinary risk, of obstructing justice under 18 U.S.C. § 3142(f)(2)(B). The magnitude of this risk cannot be sufficiently diminished by conditions of release. It is true that he did not attempt to obstruct justice in his prior misdemeanor proceedings and has cooperated with law enforcement searches of his home. However, Middleton's years-long history of threats to injure people, his failure to stop making those threats when ordered to do so by a court, his continued possession of non-firearm weapons and self-proclaimed access to firearms, and the nature of the charges in this case qualify his risk of obstructing justice as "serious."

And while Middleton categorizes himself as a simply having a "big mouth," what has come out of his "big mouth" could easily be construed as threats to the lives of Probation Officers assigned to supervise him or other witnesses in this case. All these factors render him a "serious" risk of obstructing or attempting to obstruct justice pending trial. Thus, detention of Middleton is authorized under 18 U.S.C. § 3142(f)(2)(B).

    2.    Weighing of Detention Factors in § 3142(g)

Since Middleton fits within two of the circumstances listed in 18 U.S.C. § 3142(f), the Court turns to its "independent review" of the detention decision. The Court adopts the factual findings made by Magistrate Judge Daly in her August 23, 2024, order but weighs the factors *de novo*. The Court clarifies that there is no rebuttable presumption of detention in this case pursuant to 18 U.S.C. § 3142(e).

To reiterate, the BRA "allows a federal court to detain an arrestee pending trial if the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure . . . the safety of any other person and the community.'" *United States v. Salerno*, 481 U.S. 739, 741 (1987); *see* 18 U.S.C. § 3142(e)(1), (f). The Court

considers the factors listed in 18 U.S.C. § 3142(g):

> **(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
> > **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> > **(2)** the weight of the evidence against the person;
> > **(3)** the history and characteristics of the person, including—
> > > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> > **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

*See United States v. Wilks*, 15 F.4th 842, 846 (7th Cir. 2021).

The Government contends Middleton is a danger to others and to the community and that no conditions or combination of conditions would assure the safety of others.  It incorporates its arguments to Magistrate Judge Daly as well as the exhibits to its brief in that matter (Doc. 29, Ex. 1-13) and highlights Middleton's "campaign of threats" to injure others that began in 2018 when he began to threaten to kill his own family.  He then violated orders of protection by making more death threats and expanded his threat targets to state and local law enforcement and their families.  His emails provide documentary evidence of his threats.  The Government points to evidence that the Probation Office could not reasonably supervise Middleton on bond in light of the threats he has made in the past, and that the lack of ability to adequately supervise would pose an additional

danger to the community. The Government believes conditions of release would be ineffective to control Middleton's behavior.

Middleton maintains the Government has not carried its burden by clear and convincing evidence. He argues that it has not shown he has any intention—or has taken any concrete steps—to follow through on his threats to injure any particular person. He notes that searches of his and his mother's homes did not yield any firearms, and that he remained peaceful and cooperative during those searches. He maintains that the Probation Office could search his home without any danger. He further claims his firearms are at a location that he offered to disclose to the Court upon its request. He further claims a past arrest in Washington Park was a case of mistaken identity. Finally, he notes that the Franklin County Jail, where he is currently being detained, is not adequately caring for his medical needs.

The Court weighs the relevant factors as follows. Middleton has been charged with a crime of violence for alleged threats to injure people. He has made similar threats consistently over recent years. He has indicated he has access to firearms and other weapons that would make it possible to carry out the alleged threats. His threats have been widespread to dozens if not hundreds of employees of two state agencies and two county State's Attorney's offices and their families. His threats are memorialized in written emails, which are likely to be strong evidence that he actually made the statements.

Middleton has a history of making threats even against his own loved ones and is irked by the fact that the State revoked his Firearm Owner Identification ("FOID") card when his family got a protective order against him. As a consequence, he cannot legally possess firearms at this time. While the Court is sympathetic that he is currently unable to hunt with a firearm, Middleton's own alleged choice of threats as a problem-solving strategy—with his family and with government officials—is the moving force behind his current predicament, not the actions of those who irk him.

The Court acknowledges that Middleton has local family ties and has lived in Southern Illinois for quite a while.  He is employed as a pharmacist, has no history of drug or alcohol abuse, and has minimal criminal history, although what history he has—disorderly conduct—appears to be a result of his bad problem-solving choices.

Until Middleton is able to adopt problem-solving strategies of a civilized society instead of threats of violence and resort to weapons, the Court believes there will be no conditions or combination of conditions that will reasonably assure the safety of other people and the community. The Court is specifically concerned with the potential for violence toward Probation Officers assigned to supervised Middleton on pretrial release and believes at the current juncture that the Probation Office cannot adequately supervise Middleton to protect the public.  The Government has satisfied its burden of proving this by clear and convincing evidence.

However, because it appears Middleton's medical needs are not being adequately met at his current facility, the Court will order that he be transferred to another facility for his pretrial detention.

C. <u>Deadline to Appeal</u>

As a final matter, the Court believes there may be some confusion about the time in which Middleton can appeal the denial of his motion to revoke detention since the Court orally announced its decision on December 12, 2024, but did not enter a written order until several weeks later.  This confusion would constitute good cause for a late notice of appeal.  To avoid any further confusion or prejudice, pursuant to Federal Rule of Appellate Procedure 4(b)(4), the Court extends the time for filing a notice of appeal to 14 days after entry of this written order on the docket.

### III. Conclusion

For the foregoing reasons, the Court:

- **DENIES** Middleton's motion to revoke (Doc. 37) Magistrate Judge Daly's August 23, 2024,

order (Doc. 34) denying Middleton's motion for release from custody (Doc. 28);

- **ORDERS** that Middleton's pretrial detention pursuant to 18 U.S.C. § 3142(e) (Doc. 18) continue to be in effect unless the Court orders otherwise;

- **ORDERS** that the USMS take steps to house Middleton at another facility that will better tend to his medical needs; and

- **ORDERS** that the deadline to file a notice of appeal from this decision is extended to 14 days after entry of this written order on the docket.

**IT IS SO ORDERED.**
**DATED:  December 30, 2024**

                                                        s/ J. Phil Gilbert
                                                       **J. PHIL GILBERT**
                                                       **DISTRICT JUDGE**